# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| HARTFORD CASUALTY INS. CO. | Civil Action No. 6:19-0127 |
| versus | Judge Michael J Juneau |
| TECHE-VERMILION FRESH WATER DISTRICT, ET AL. | Magistrate Judge Carol B Whitehurst |

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is the Motion to Dismiss pursuant to Rule 12(b)(6) filed by defendant, Sellers & Associates, Inc. ("Sellers") [Doc. 33]. Plaintiff, Hartford Casualty Insurance Company ("Hartford"), filed an opposition brief [Doc. 36], and Sellers filed a Reply brief [Doc. 39]. After review of the briefs and the applicable law, the undersigned RECOMMENDS that the motion to dismiss be DENIED.

## I. BACKGROUND

This case has its roots in a contract between the Teche-Vermilion Fresh Water District ("Teche"), a Political subdivision of the State of Louisiana, and Cecil D. Gassiott, LLC ("CDG") to construct a project known as the Teche-Vermilion Fresh Water District State Canal Siphon Project in St. Landry Parish, Louisiana (the "Project"). Hartford's First Amended and Supplemental Complaint alleges the following facts regarding the contract and the project:

- Hartford was CGD's surety under a statutory performance bond.

- Teche was party to a contract with APTIM Coastal, Inc., f/k/a CB&I Coastal, Inc., f/k/a/ Shaw Costal, Inc. ("Shaw"), under which Shaw served as the engineer and as Teche's agent on the Project.

- Shaw entered into a contract with Sellers, under which Sellers served as the resident engineer for the project and acted as the field representative of Shaw and Teche on the Project.

- Shaw and Sellers had "the responsibility to decide questions that arose as to the interpretation of the plans and specifications for the Contract."

- Sellers was responsible – pursuant to its contract with Shaw – for "reviewing project work …. rejecting defective project work …. verifying tests and inspections … interpreting the contract documents …. considering and evaluating the contractor's suggestions for modifications … drafting proposed change orders and work directives and recommending change orders and work directives."

- CDG commenced construction on the Project and encountered an underground concrete obstruction, leaving CDG unable to continue with construction of the Project.

- CDG then formally submitted a letter pursuant to which CDG voluntarily defaulted under the Contract, and Hartford stepped in to complete the Project, entering into a Takeover Agreement with Teche.

- Hartford contracted with a third party, Cycle Construction Company, for the purpose of completing the Project.

*R. 26, ¶¶ 5-17.*

In its Complaint, Hartford alleges general breach of contract claims against Teche. Specifically, Hartford alleges that "Teche's failure to compensate Hartford for the extra work and/or out-of-scope work performed on the Project, including, but not limited to, the work performed on removing the Obstruction and the pipe

separation repairs, constitutes a breach of the Contract and the Takeover Agreement." *R. 26, ¶36.* Hartford further alleges that "Teche's failure to provide extensions of time for all delays caused by unforeseen conditions and the performance of extra work and/or out-of-scope work, including but not limited to the work relating to the removal of the Obstruction and the pipe separation repair work, constitutes a breach of the Contract and the Takeover Agreement." *R. 26, ¶38.* Finally, Hartford alleges that "Teche's failure to compensate Hartford for damages incurred during the work stoppage ordered by Sellers as a result of the Obstruction also constitutes a breach of the Contract and the Takeover Agreement." *R. 26, ¶39.*

Regarding Sellers, Hartford alleges the following acts of negligence by Sellers:

- failing to properly administer the Contract;

- failing to timely review submittals and change orders;

- failing to timely and properly perform inspections;

- filing to properly interpret the contract documents;

-  failing to promptly provide additional instructions and clarifications during the Project;

- Failure to recommend approval of proposed change orders with sufficient cost and time for work performed that was outside the scope of the Contract and/or extra work; and

- Compelling the contractor and/or Cycle to perform work not included in the plans and specifications and refusing to provide proper change orders and compensation therefore.

3

*R. 26, ¶48.*

The premise of Hartford's claims against Sellers is that Sellers, as a professional architect/engineer on the project, owed a duty to Hartford, but breached that duty, causing Hartford to suffer damages therefrom. Hartford seeks to recover all costs associated with the extra work, additional contract days for the performance of the work, and, in the case of the obstruction, compensation for damages incurred during the Project downtime while the obstruction was being investigated.

In the instant motion to dismiss, Sellers argues it can have no liability to Hartford, because all of the alleged duties that Hartford claims were breached arise under the contract between *Sellers and Shaw*, and Hartford fails to show how Sellers owed any duty to *Hartford* to perform its contractual obligations to Shaw (and to Teche) for the benefit of Hartford. Thus, Sellers argues there is no privity of contract between it and Hartford, and therefore it can have no liability to Hartford under the circumstances alleged. Sellers further submits that Hartford's complaint inadequately alleges that Sellers owes a general duty to "use a degree of care and skill customarily employed by other of the same profession in the same general area," *R. 26, ¶49.* According to Sellers, all of the duties set forth in the Complaint are owed by Sellers to its contracting party, Shaw, and to Teche as owner of the Project, for whom Sellers acted as agent. Sellers contends that there is no allegation

in Hartford's Complaint that Sellers performed professional design services on which third-parties reasonably rely.

In opposition to Seller's motion, Hartford argues that Louisiana law provides a cause of action in negligence in favor of sureties against a professional, such as Sellers, without requiring privity of contract and irrespective of any agency relationship the professional may have. Hartford submits that its Complaint sets forth all facts necessary for Hartford's claim against Sellers – that "Sellers, as a professional engineer, had a duty to Hartford, breached that duty, and that Sellers is liable for all damages resulting from said breach." *R. 36, p. 1*.

The issue has been fully briefed and is now ripe for consideration.

## II. LAW AND ANALYSIS

### A. Motion To Dismiss Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v.*

*Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

**B. Analysis**

In the instant case, Hartford essentially alleges that Sellers entered into a contract with Shaw to serve as the resident engineer for the Project and to act as the field representative of Shaw and Teche on the Project. Further, Hartford alleges that Shaw and/or Sellers improperly recommended that Teche reject the proposed change orders submitted by Hartford for out-of-scope work performed on the Project. The Complaint outlines Sellers' negligence, acts, errors, omissions and/or breaches of

duties in a variety of ways, and alleges that Sellers, as a professional architect/engineer on the Project, owed a duty to Hartford to use the degree of care and skill customarily employed by others of the same profession in the same general area, but breached that duty to Hartford. Hartford alleges Sellers is liable for any and all damages incurred by Hartford as a result of Sellers' negligence, errors, omissions, and/or breaches of duties. In the instant motion, Sellers argues that any duty it owed was owed to Shaw and/or Teche, and not Hartford, with whom it had no privity of contract.

The question on a motion to dismiss is whether Hartford has successfully stated a claim against Sellers, not whether Hartford can prove the claim or assert sufficient facts to withstand summary judgment on its claims. Both parties appear to agree that Louisiana substantive law governs the question of whether a cause of action exists in favor of a surety against a professional – such as Sellers – with whom there is no privity of contract. Hartford cites several cases holding that such a duty exists, however Sellers argues these cases are distinguishable.

In *Lathan Co., Inc. v. State, Department of Education, Recovery School District*, 2017 WL 6032333 (La. App. 1st Cir. 2017), the Louisiana First Circuit addressed a similar factual situation as the one presented in this case, although the procedural vehicle employed in *Lathan* was a motion for summary judgment, not a motion to dismiss. In *Lathan*, the Lathan company entered into a contract with the

7

State of Louisiana for the renovation of a school in New Orleans. An architect for the project was hired, and the school district contracted with Jacobs Project Management Company ("Jacobs"), a project management company, to serve as the construction manager on the project. 2017 WL 6032333 at *3. Lathan ultimately filed a petition for mandamus against the school district for the payment of amounts owed for Lathan's work. Lathan thereafter added Jacobs as a party, alleging that Jacobs owed a duty to Lathan to conduct constructability reviews and to oversee and administer the project according to the standard of care of similar professionals in the industry, which Lathan alleged Jacobs did not do.[1]  *Id.* at *3. Lathan's claims against Jacobs were for negligence and a claim under the Louisiana Unfair Trade Practices Act ("LUTPA").

Jacobs filed a motion for summary judgment with the trial court, which granted the motion, holding that Jacobs owed Lathan no duty, as there was no contract between the parties, and that in the absence of a duty, Lathan could not recover under either its negligence or LUTPA claims. *Id.* at *5. On appeal, the

---

[1] Lathan alleged the following instances of negligence on the part of Jacobs: (1) its unreasonable refusal to approve Lathan's payment applications and schedules; (2) its extremely delayed responses to Lathan's questions and submittals; (3) its refusal to give needed responses to reasonable questions; (4) its refusal to properly recommend substantial completion; (5) its refusal to properly manage the oversight of the project; and (6) its overall interference with the progress and completion of the project. Accordingly, Lathan alleged that it was entitled to damages under general tort law for Jacobs's negligent professional undertaking and under the Louisiana Unfair Trade Practices Act ("LUTPA").

Louisiana First Circuit reversed, finding that Jacobs owed a duty to the Lathan to administer the project according to similar industry professionals' standard of care, even though the project manager and contractor had no privity of contract. Analyzing the claims under Louisiana's duty-risk analysis, the court explained:

> Accordingly, after careful review of the record herein, we find that although Jacobs was not in direct contractual privity with Lathan, Jacobs must be deemed and held to know that its services were not only for the protection or interests of the owner but also third parties, including, specifically, Lathan, who was acting as the general contractor on the project. As outlined above, it was foreseeable and to a degree certain that Lathan would suffer economic harm if Jacobs failed to perform, or negligently performed, many of its professional duties. See Harris, 861 F.Supp.2d at 753; *Colbert*, 600 So.2d at 725. Moreover, as outlined above, there is a close connection between Jacobs's alleged failure to act according to industry standards, and the alleged economic harm suffered by Lathan. *Colbert,* 600 So.2d at 725.
>
> Thus, after carefully considering the record herein, and applying the balancing test enunciated in the jurisprudence noted above, we are unable to find any reason why the courts' rationale in such prior jurisprudence, extending the liability of architects and engineers, should not likewise apply to a project management professional, under the facts of this case. While the balancing test adopted by the Fifth Circuit in Colbert and the Middle District in Harris Builders is not binding, it is persuasive herein, and under this test, we agree with Lathan that a duty would be owed by Jacobs to plaintiff.

*Id.* at *14-15. Hartford cites several additional cases holding a duty of care exists on the part of engineers and architects, cases that were cited in *Lathan* and informed the *Lathan* court's expansion of the doctrine to the project manager in that case. *See, e.g., American Fidelity Ins. Co. v. Pavia-Byrne Engineering Corp.*, 393 So.2d 830 (La. App. 2nd Cir. 1981) (recognizing engineer's liability to surety by holding that

the engineer's duty extends to those who could foreseeably be injured by a breach of the professional's duty); *City of Houma v. Municipal & Industrial Pipe Serv., Inc.*,

Lathan applies and incorporates a long line of Louisiana jurisprudence which imposes a duty on professionals to perform in accordance with the generally accepted standards of their respective industry. In *Calandro Development, Inc. v. R.M. Butler Contractors, Inc.*, 249 So.2d 254, 265 (La. App. 1st Cir. 1971), cited by the court in *Lathan*, the court held that an engineer, who designed and supervised construction of a subdivision, provided surveying services, and prepared plans and contract documents, owed a duty to the general contractor's surety to adequately supervise work to ensure completion in accord with the contract plans and specifications. *Calandro*, 249 So.2d at 260–61. In reaching this conclusion, the court explained that a "third party who is not in privity may, nevertheless, have an action in tort against an architect or engineer," because "[a]n engineer or architect must be deemed and held to know that his services are for the protection, not only of the interests of the owner" but also to third parties who must "rely on the architect or engineer to produce a completed project conformable with the contract plans and specifications." *Calandro*, 249 So.2d at 264–65.

Similarly, in *Colbert v. B.F. Carvin Construction Co.*, 600 So.2d 719, 723 (La. App. 5th Cir.), *writs denied*, 604 So.2d 1309, 1311 (La. 1992), also cited in *Lathan*, after surveying numerous cases from Louisiana and other jurisdictions, the

10

appellate court held that a contractor had stated a cause of action for negligent professional undertaking against an architect by alleging that the architect: failed to prepare adequate plans and specifications; failed to promptly provide additional instructions and clarifications during the project; provided economic pressure on the owner to withhold payments due to compel the contractor to perform extra work not included in the plan and refused to provide change orders and compensation therefor; and refused to timely inspect the areas of work that have been completed. *Colbert*, 600 So.2d at 720–21, 725. The Fifth Circuit adopted a balancing test that was to be applied on a case-by-case basis in determining whether a cause of action exists and explained:

> "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, and the policy of preventing future harm." [Emphasis added.]

*Colbert*, 600 So.2d at 725.

Sellers argues the *Lathan* case is not controlling and is infrequently cited, but largely cites to the dissent in the case and argues factual matters, including the fact that Jacobs – like Sellers here – was not able to approve change orders, which was within the province of the owner. Sellers also generally argues that cases wherein design professionals were held to owe a duty of care to persons with whom the

11

design professionals had no privity of contract are inapposite, because the nature of Sellers' duties alleged in the Complaint do not involve the production of designs, plans, or specifications. Sellers argues its role on the project was that of agent or mandatary, and that all of the activities taken by Sellers were taken for the benefit of Teche. The jurisprudence is clear, however, that whether a particular professional owes a duty absent of privity of contract is a fact-intensive inquiry, with a particular focus on the foreseeability of injury to the entity claiming damages. Thus, all of the foregoing details are matters for discovery, which has not been taken in this case, or if it has, it is not before the Court, which is deciding the issue on a motion to dismiss.

*Lathan* remains good law and supports Hartford's argument that it has successfully stated a cause of action exists against Sellers, which may or may not be able to be proven and may or may not survive a summary judgment motion. At this juncture, however, Hartford has, on the face of its Complaint, alleged sufficient factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of its claim. *Lormand*, 565 F.3d at 255–57. The factual details surrounding what Sellers' role was on the Project will be fleshed out in discovery and may well become the subject of a motion for summary judgment, but, at this stage of the litigation, Hartford has satisfied the Rule 12(b)(6) standard, and for this reason, the motion to dismiss should be DENIED.

## III. CONCLUSION

Based on the foregoing,

**IT IS RECOMMENDED** that the Motion to Dismiss pursuant to Rule 12(b)(6) filed by defendant, Sellers & Associates, Inc. ("Sellers") [Doc. 33] be **DENIED.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 16th day of December, 2019 at Lafayette, Louisiana.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE